FILED

2006 Jan-31  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ANTHONY HARRIS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] CV03-CO-02924-W |
| | ] |
| CITY OF TUSCALOOSA and JAMES PERRY | ] |
| MADISON, | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendants City of Tuscaloosa ("Tuscaloosa") and James Perry Madison's Motion for Summary Judgment, which was filed on October 31, 2005.  (Doc. 34.)  Plaintiff Anthony Harris has sued Defendants alleging that Officer Madison, acting under color of state law within the meaning of 42 U.S.C. § 1983 ("§ 1983") falsely arrested, assaulted, and battered Plaintiff, depriving him of his rights under the Fourth and Fourteenth Amendments.  Plaintiff also raised state law claims against Madison alleging that his conduct amounted to a false arrest and

constituted the tort of assault and battery.  (Doc. 1.)  Defendants have not sought summary judgment on Plaintiff's state law claims, and Plaintiff has agreed to the dismissal of his § 1983 claims against Tuscaloosa and his § 1983 unlawful seizure claim against Madison.   (Docs. 34, 36, & 38.)  Therefore, the only issue remaining for this Court to decide on summary judgment is whether Officer Madison deprived Plaintiff of his rights in violation of § 1983 by exercising excessive force in using his vehicle to stop Plaintiff.  (Doc. 36, p. 6.)  The issues raised in Defendants' Motion for Summary Judgment are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendants' motion will be granted in all respects.

II.    Facts.[1]

On May 8, 2002, Tuscaloosa Police Department Officers Sergeant James Perry Madison and Investigator Brad Mason saw a black male at the Sonic Restaurant on University Boulevard in the Alberta City area of

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Tuscaloosa, Alabama, who they believed to be Antonio Dallas.  (Doc. 34, Exhibit A, pp. 1-2; Exhibit B, pp. 1 & 3.)  Dallas had an outstanding arrest warrant for second degree theft, a felony in the state of Alabama.  *Id*.  As Officer Madison drove the light blue, unmarked police car into the Sonic parking lot, the as yet unidentified black male turned to look at them and then turned back around.  (Doc. 34, Exhibit C, pp. 71, 81-82.)  Madison then stopped the police car, and Officer Mason exited.  (Doc. 34, Exhibit D, p. 8.) While Mason attempted to talk to the suspect, Madison placed a blue light on the dash of the unmarked police car.  (Doc. 34, Exhibit A, p. 1.)  Plaintiff stated that Mason said a couple of things to him, but he was not paying any attention.  (Doc. 34, Exhibit C, pp. 75-76.)  As Mason started to approach Harris, Harris took off running at a fast pace.  *Id*. at 99-100.  According to his own deposition testimony, Harris ran from the officers because "in the heat of the moment" everything was happening around him and Mason was trying to "grab a hold of" him.  *Id*. at 132.

Investigator Mason pursued Harris on foot from the Sonic parking lot down the sidewalk next to University Boulevard, which consists of five lanes including two east bound lanes, two west bound lanes, and a turn lane.  *Id*.

at 134-35.  Harris continued to run in a westerly direction down the north side of University Boulevard, toward the campus of the University of Alabama.  (Doc. 34, Exhibit A, p. 1; Exhibit C, pp. 120-22; Exhibit D, p. 10.) Officer Madison exited the Sonic parking lot and drove in a westerly direction along University Boulevard in the inside lane of the two westbound lanes.  (Doc. 34, Exhibit C, p. 135; Exhibit D, p. 15.)  Madison contends that he drove the vehicle in an attempt to get ahead of the suspect so that he could continue the pursuit on foot.  (Doc. 34, Exhibit A, p. 1.)  While running down the sidewalk, Harris testified at his deposition that he looked back at Officer Mason and gave a "smirk" and then ran into University Boulevard in an attempt to cross the road.  (Doc. 34, Exhibit A, p. 1; Exhibit C, pp. 118, 133, & 135.)  While running away from the officers, Harris stated that he looked back and saw Officer Madison slow down like he was going to stop and pick up Mason.  (Doc. 34, Exhibit C, p. 151.)  At that point, Harris was approximately thirty to forty feet away from the police car.  *Id*. at 151-52.

Plaintiff intended to cross the street from Officer Madison's right in an area where there is no traffic light.  *Id*. at 142.  While doing so, he testified that he stopped in the middle of the lane closest to the sidewalk to check

on traffic, but his counsel refutes this statement.  *Id*. at 143-44.  Sergeant

Madison stated that when Harris entered the roadway he swerved to his left,

braking hard to stop, in order to avoid hitting Harris.  (Doc. 34, Exhibit A,

p. 1; Exhibits F & G.)  According to Mason, if Madison had turned to his left

more than he did, he would have run into oncoming traffic.  (Doc. 34,

Exhibit D, p. 15.)  It is at this point that Harris says that Officer Madison

struck him in the middle lane.  (Doc. 34, Exhibit C, pp. 142-55.)  The

damage to the car was on the passenger side, and included a cracked

windshield and a broken mirror.  (*See* Doc. 34, Exhibit B, p.1; Doc. 36,

Exhibit 1, pp. 77-81.)  The incident occurred in the center lane of traffic,

and a fifty-five foot long skid mark was made, which began in the inside lane

and ended in the center lane.  (Doc. 34, Exhibit G.)

    The officers then handcuffed Harris while he was on the ground.  (Doc.

34, Exhibit D, p. 43.)  Madison called for emergency medial assistance

stating that he had Antonio Dallas in custody, at which time Mr. Harris

yelled out that he was not Dallas.  (Doc. 34, Exhibit B, p. 1; Exhibit D, p.

43.)  While in the ambulance, Plaintiff told Mason that his name was

Anthony Harris.  (Doc. 34, Exhibit B, p. 1.)  Harris's identity was verified at

the hospital, and he was released the same day.  (Doc. 34, Exhibit D, p. 49,

Exhibit J, p. 2.)  No charges were ever filed against Mr. Harris, and no

formal arrest was made.  (Doc. 34, Exhibit A, p. 3; Exhibit B, p. 3.)

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the evidence] which it believes demonstrate

the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof.

*Id*. at 322-23.  In evaluating the arguments of the movant, the court must

view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

In Count One of Plaintiff's Complaint, he alleges that defendant Madison acted under color of state law when he falsely arrested, assaulted, and battered Plaintiff, thereby depriving him of his rights under the Fourth and Fourteenth Amendments to the Constitution in violation of § 1983. (Doc. 1, ¶ 21.)  Section 1983 imposes liability upon individuals and entities that act under color of law.  42 U.S.C. § 1983.  In cases such as the one at

hand, the under-color-of-law inquiry is not difficult because the plaintiff has sued government employees for actions taken pursuant to their governmental duties and powers. *See generally Tennessee v. Garner*, 471 U.S. 1, 5-7 (1985). Defendants argue that Plaintiff cannot sustain claims for unreasonable seizure and excessive use of force because Madison did not intend to collide with Harris. (Doc. 34.) Moreover, Defendants also contend that defendant Madison is protected from any potential liability by the shield of qualified immunity. *Id*.

A.     Plaintiff's § 1983 Excessive Force Claim.

Defendants argue that Madison is entitled to summary judgment on Plaintiff's § 1983 excessive force claim on the grounds of qualified immunity. (Doc. 34.) The very first step in analyzing any case involving the defense of qualified immunity "is to determine . . . whether the plaintiff has alleged a deprivation of a constitutional right." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). Plaintiff asserts that his Fourth Amendment rights were violated when Officer Madison allegedly used his car to stop Plaintiff.

The Fourth Amendment provides "seized" individuals with the ability to bring an action under § 1983 when a government official uses unreasonable force to control suspects.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1985).  To establish a claim of excessive force under the Fourth Amendment, a plaintiff must prove that: 1) in using force, the officials "seized" the suspect within the meaning of the Fourth Amendment; and 2) the force was objectively unreasonable.  *See, e.g., Graham*, 490 U.S. at 395-96; *Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir. 2003).

1.    The Seizure.

The issue in this case, as recognized by the parties, is whether Officer Madison intended to terminate Mr. Harris's freedom of movement by impacting him with the vehicle.  (Doc. 34, p. 11; Doc. 36, p. 14.)  The Eleventh Circuit has precluded § 1983 actions for persons who are injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a police officer acting within the line and scope of his or her duty.  *See Cannon v. Taylor*, 782 F.2d 947, 950 (11th Cir. 1986) (stating that "[a]utomobile negligence actions are grist for the state law mill.  But they do not rise to the level of a constitutional deprivation.").

In fact, the Supreme Court, in *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989), held that no Fourth Amendment seizure occurs when a police car, in pursuit of a suspect, seeks to "stop the suspect only by the show of authority represented by flashing lights and continuing pursuit . . ." but the officer instead stops the suspect by crashing into him. *Id. See also Hernandez v. Jarman*, 340 F.3d 617, 623 (8th Cir. 2003) ("a Fourth Amendment seizure occurs as a result of a car collision only where the police officer intended the collision to be the result.")  The Supreme Court has held:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Lewis*, 523 U.S. at 844 (quoting *Brower*, 489 U.S. at 596-97) (emphasis in original).

Harris may rely upon either direct or circumstantial evidence in his attempt to satisfy his burden of presenting sufficient evidence to raise a

genuine issue of material fact as to Officer Madison's intent.  *See, e.g.,* *Baker v. Norman,* 651 F.2d 1107, 1126 (5th Cir. 1981).  In *Baker*, the Fifth Circuit explained that direct evidence of a person's state of mind can come only from that person's own statements, whether they are "made on or off the witness stand," and whether they are "made before, during, or after committing the complained-of conduct."  *Id*.  However, objective evidence may also be used to circumstantially prove the government official's state of mind.  *Id*.

Defendants contend that Mr. Harris cannot offer any admissible evidence that Officer Madison intended his vehicle to collide with Harris. (Doc. 34, p. 11.)  They allege that the collision was not the result of any intentional action on the part of Sergeant Madison.  *Id*.  In fact, Madison provided both a statement and an affidavit immediately after the incident in which he stated that his intention was to get ahead of Mr. Harris, get out of his car, and chase him on foot.  (Doc. 34, Exhibit A.)  There is no evidence before the Court that establishes that Officer Madison has ever declared that it was his intention to collide with Mr. Harris or that he intended to use the police car to stop Mr. Harris from fleeing.

Defendants also attack the credibility of each of Plaintiff's eyewitnesses, as well as the credibility of Mr. Harris himself.   The defendants point out that Plaintiff is a diagnosed paranoid schizophrenic; a fact that they claim makes his testimony "inherently suspect." (Doc. 34, p. 12; Exhibit K.)  Harris was diagnosed as a paranoid schizophrenic when his sister took him to the emergency room because he said that he had been hearing voices for the last three months and they were now telling him to jump out of the window.   (Doc. 34, Exhibit L.)   He was admitted with symptoms that included complaints that people were chasing and trying to kill him, and it was noted during his admission that his insight and judgment were poor.   (Doc. 34, Exhibit L.)

Based upon Harris's own account of the incident, as described in detail in Section II *supra*, Defendants argue that Harris is forced to rely upon an improbable inference to support his allegations.   (Doc. 34, pp. 13-14.)  They allege that it is clear from the photographs taken immediately after the incident that Harris made contact with the police car on the passenger side in the area of the rear view mirror in the turn, or neutral lane.   (Doc. 34, p. 14; Exhibits F-I.)   They also state that the front of the car did not strike

Harris and that it is clear that the car swerved away from Harris to Officer Madison's left before the collision.  *Id.*  Therefore, according to Defendants, there is no way that Sergeant Madison could have hit Harris, intentionally or otherwise, with the side of the police car if Harris was standing in the road as he claims.  (Doc. 34, p. 14.)

Defendants also attack the testimony of Audrey Burch, an eyewitness to the incident who was employed as a store manager at the Sonic Restaurant where the police first observed Mr. Harris.  (Doc. 34, p. 14.)  For example, Ms. Burch testified that the persons who initially confronted Mr. Harris were in a dark-colored Suburban and that the vehicle that collided with Harris was a white police car with markings.  (Doc. 34, Exhibit N, p. 56.)  In fact, she does not even remember seeing a four-door, light-colored sedan like the one driven by Officer Madison.  *Id.* at 32.  She also testified that the black and white marked police car was traveling in an easterly direction when it made contact with Harris, instead of a westerly direction as Harris testified in his second deposition.  *Id.* at 56-57.  Ms. Burch acknowledged that she had a difficult time seeing the events as they transpired because her view was blocked by the stalls at Sonic.  *Id.* at 63-64

& 66.  She also stated that she became confused during the deposition about whether she was correctly describing the incident in question or another accident in Alberta City, where Sonic is located.  *Id*. at 69-70.  When asked why she believed the police car was chasing Plaintiff, she was unable to provide any facts to support her claim.  *Id*. at 73-74.  She then retreated from her statement and replied, "I don't know if he ran into the car or if the car intentionally hit him. . . ."  *Id*. at 79.  She retreated even further saying, "You know, I'm thinking maybe he ran into the car. . . ."  *Id*. at 88.

Clarence Charles, another Sonic employee, also testified on behalf of Mr. Harris as an eyewitness to the incident.  (Doc. 34, Exhibit O.)  Charles testified that he saw three or four people chasing Mr. Harris, and he also believed that the collision occurred in the lane nearest Sonic, instead of the turn lane, as testified to by Plaintiff and Officers Madison and Mason.  *Id*. at 78 & 111-12.  Charles also stated that Plaintiff hit the front of the car, saying, "It wasn't the side of the car or nothing. It was the front of the car that hit that dude. . . ."  *Id*. at 118-19.  Charles said that he did not know whether Officer Madison intentionally hit Plaintiff.  He stated, "I don't know, I just know he hit him."  *Id*. at 123.  Because Charles' testimony

conflicts with Plaintiff's and he cannot say whether Madison intentionally hit Plaintiff, Defendants contend that it is insufficient to raise a genuine issue of material fact.  (Doc. 34, p. 19.)

Finally, Defendants assert that the testimony of Demetrous Samuel, a Hardee's employee and eyewitness to the incident, is based on erroneous facts and unsupported conclusory allegations.  (Doc. 34, p. 19.)  Ms. Samuel testified that she and another employee ran across the street to gain a better view of the events and that they saw Plaintiff run across University Boulevard only to be hit by Officer Madison when returning to the right-hand side of the street.  (Doc. 34, Exhibit P, pp. 44-46.)  Defendants point out that no one, not even Mr. Harris, says that he was crossing University Boulevard from Officer Madison's left to his right.  (Doc. 34, p. 20.)  Ms. Samuel testified that the front grill of the police car impacted with Harris, when in fact the impact occurred on the passenger side of the vehicle. (Doc. 34, Exhibit P, p. 59; Exhibits H & I.)  Samuel also stated that the police car's engine revved and it sped up before intentionally colliding with Plaintiff.  (Doc. 34, Exhibit P, pp. 35 & 73.)  Defendants argue that this is merely a conclusory allegation, since Ms. Samuel was unable to provide any

reasons as to why she believed the police car intentionally collided with Harris.  (Doc. 34, p. 21.)

While Plaintiff agrees that he must provide admissible evidence that Madison intended his vehicle to collide with Harris, he does not believe that Defendants have correctly analyzed the issue.  (Doc. 36, p. 14.)  Plaintiff first cites to the cases of *Reeves v. Sanderson Plumbing, Inc.,* 530 U.S. 133, 150 (2000), and *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004), which support the proposition that this Court is not required to accept Madison's claim regarding his subjective intent as proper evidence supporting his motion for summary judgment.  (Doc. 36, pp. 14-15.)  Mr. Harris then sets out what he believes to be "objective facts" which support his allegation that Officer Madison intentionally hit him with the police car: 1) Plaintiff was a pedestrian; 2) Defendant Madison was in a vehicle; 3) Defendant Madison pursued Plaintiff; and 4) Defendant Madison was in the inside of two right-hand lanes when Plaintiff "darted" across the street "well over 55 feet in front of him, traveling from Madison's right to left." *Id*. at 15-16.   Plaintiff asserts that these "objective facts support a reasonable inference that defendant [sic] attempted to and did stop

plaintiff [sic] with his vehicle." (Doc. 36, p. 16.)  According to Mr. Harris, "a reasonable jury could conclude, as two eyewitnesses testified, that he angled his vehicle to intercept and stop plaintiff." *Id.*

Plaintiff also argues that his contentions are supported by the decision of *Brower v. County of Inyo*, 489 U.S. 593, which was a section 1983 action alleging that the police officers violated the rights of the decedent when they set up a roadblock to stop him from eluding police officers during a high speed chase. *Id.* (Doc. 36, p. 17.)  He correctly notes that the Court held that a seizure occurs if an individual is stopped "by the very instrumentality set in motion or put in place in order to achieve that result." *Brower*, 489 U.S. at 599.  However, the Court also noted that the plaintiffs could "claim the right to recover for Brower's death *only* because the unreasonableness they allege consists precisely of setting up the roadblock in such a manner as to be likely to kill him." *Id.* (emphasis added)  The fact that Brower did not have the opportunity to avoid hitting the roadblock weighed heavy on the Court's decision.  "[I]f Brower had had the opportunity to stop voluntarily at the roadblock, but had negligently or intentionally driven into it, then, because of lack of proximate causality,

respondents, though responsible for depriving him of his freedom of movement, would not be liable for his death." *Id.*

Unlike the roadblock in *Brower*, which was clearly intentionally set up to stop Brower's vehicle without giving him an opportunity to see the roadblock and stop voluntarily, there is not sufficient evidence in this case that Officer Madison intentionally used his car to stop Harris.  In order to survive summary judgment, Plaintiff must prove that he was "seized" within the meaning of the Fourth Amendment.  *See Graham*, 490 U.S. at 395-96.  Since the alleged seizure occurred as a result of a car collision, Mr. Harris must prove that Officer Madison intended the collision to occur.  *See, e.g., Lewis*, 523 U.S. at 844; *Brower*, 489 U.S. at 596-97; *Hernandez*, 340 F.3d at 623.  There is no direct evidence in this case that Madison intended to hit Harris with the police car, so Plaintiff must rely upon circumstantial evidence to establish his claim.  *See, e.g., Baker*, 651 F.2d at 1126 (clarifying that the only direct evidence of a person's state of mind is that person's own statements).

The circumstantial evidence relied upon by Plaintiff is the "objective facts" which he lists out in his brief and presumably the testimony of the

three eyewitnesses.  Plaintiff's account of the "objective facts," listed above, does not lead to the conclusion that Madison intended to hit Plaintiff.  In fact, the evidence is consistent with Officer Madison's explanation that he was trying to avoid hitting Harris.  Madison was traveling in the inside lane, the one closest to the turn lane, when Harris "darted" across the street fifty-five feet in front of him.  The unmarked police car, with lights flashing, then swerved and slid to the left, and struck Plaintiff in the turn lane.  The skid marks are consistent with Officer Madison's explanation and show that he applied the brakes and turned to the left away from Harris in an effort to stop the car as soon as he saw Harris run across the street.  If Madison had continued straight ahead or did not apply his brakes he would have risked hitting Harris head on.  After all, Harris even testified that he stopped in the outside lane to check on traffic before continuing across the street.  (Doc. 34, Exhibit C, pp. 143-44.)  Swerving the car to the right would have meant either driving onto the sidewalk, thereby risking injury to other pedestrians and possibly colliding with stationary objects or the possibility of colliding with other vehicles traveling in the outside lane.  Swerving further to the left would have brought Officer

Madison face to face with oncoming traffic.  The facts of the incident simply do not support the contention that Madison intentionally used the car to collide with Plaintiff in order to "seize" him under the Fourth Amendment.

Additionally, none of Plaintiff's witnesses provide support for his allegation that the collision was intentional.  Ms. Burch, when pressed, testified at her deposition that she thought that Plaintiff may have actually hit the police car instead of the other way around.  (Doc. 34, Exhibit N, p. 88.)  Mr. Charles stated that he did not know whether the police car intentionally hit Plaintiff, and Ms. Samuel's testimony simply does not fit with the facts of the case.  *Id.* at Exhibit O, p. 123; Exhibit P.  According to Ms. Samuel, the car revved its engine and sped up before making contact with Mr. Harris.  *Id.* at Exhibit P, pp. 35, 73, & 93.  The fifty-five feet of skid marks are inconsistent with a car speeding up before hitting Plaintiff.

2.    Excessive Force.

Plaintiff claims that Defendant Madison used unjustified deadly force by "intentionally using a vehicle to stop a fleeing pedestrian suspect." (Doc. 36, p. 20.)  In a Fourth Amendment excessive force case, "the question is whether the officers' actions are 'objectively reasonable' in light

of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. The standard to be used in evaluating such a case is one of "objective reasonableness." *Id*. at 399. That is, the use of force in question must be judged from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. The force used by a police officer to carry out an arrest "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

Plaintiff cites to the case of *Harris v. Cowetta County*, 406 F.3d 1307, 1314-15 (11th Cir. 2005), for the proposition that it is well-established that "deadly force" is force that creates substantial risk of death or serious bodily injury. *Id*. In *Harris*, the Court explained that "an automobile, like a gun, can be used deliberately to cause death or serous bodily injury." *Id*. at 1315. Plaintiff also highlighted a case cited by the *Harris* Court which states that an attempt to hit an individual who is not in a vehicle with a moving police car "is an attempt to apprehend by use of deadly force." *See*

*Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995).   Mr. Harris then proceeds to explain that he "was an unarmed pedestrian not threatening anyone with harm," and, therefore, Madison was not entitled to use deadly force.  (Doc. 36, p. 21.)

Unfortunately, whether Madison was privileged to use deadly force in this case is not the relevant inquiry.  The case cited by Plaintiff, *Harris*, involved an incident where a police car rammed the plaintiff's vehicle. *Harris*, 406 F.3d at 1315.  There can be little doubt that the officers in *Harris* intended to collide with the plaintiff's car.  Likewise, the Eighth Circuit case highlighted by Plaintiff stated that an "attempt" to hit an individual with a police car is an attempt to use deadly force. *Ludwig*, 54 F.3d at 473.  In order to attempt to run into an individual with a car, the driver must intend the collision to occur.  For the same reasons that there is not sufficient evidence that Officer Madison unreasonably seized Mr. Harris, there is also insufficient evidence that he should be held liable for the unjustified use of deadly force.  Because Plaintiff has not created a genuine issue of material fact as to whether defendant Madison intended to seize him under the Fourth Amendment or whether the alleged use of force

was unreasonable, Defendants are entitled to summary judgment on Plaintiff's claim of excessive force under § 1983.

B.    Qualified Immunity.

Defendants contend that the doctrine of qualified immunity shields Officer Madison from any potential liability.  The seminal case regarding qualified immunity is *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), which held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818.  *See also Lee v. Ferraro*, 284 F.3d at 1193-94; *Maggio v. Sipple*, 211 F.3d 1346, 1356 (11th Cir. 2000); *Gonzales v. Lee County Hosp. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998); and *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539 (11th Cir. 1994). The purpose of qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).  Officer Madison was clearly a government official.  Therefore,

to determine whether he is entitled to qualified immunity, the Court must make a two-step inquiry.  *See, e.g., Maggio*, 211 F.3d at 1350.  First, the Court is to consider whether "the defendant government official [has proved] that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred."  *Id.* (internal quotations omitted)  If he was acting within his authority, the Court examines "whether the plaintiff has demonstrated that 'the defendant violated clearly established law.'"  *Id.* (quoting *Gonzales*, 161 F.3d at 1295).  *See also Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1998); *Stavropoulos*, 361 F.3d at 618.

As noted in the preceding sections, Mr. Harris cannot establish that Officer Madison violated any clearly established law.  Therefore, Officer Madison is entitled to the shield provided by the doctrine of qualified immunity.

V.    Conclusion.

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be granted.  A separate order in conformity with this opinion will be entered.

Done this 31st day of January 2006.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153